IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF NEW YORK
FOLEY SQUARE

PAUL G. WERSANT

Case No. 1:26-cv-8134

Plaintiff,

vs.

MARK A. CAREY,
THE LAW OFFICES OF MARK A. CAREY, P.C.,
DEBRA DONOVAN,
MICHELLE CAMARATA,
RICHARD CAMARATA,
KIM FERRANDINO,

JURY DEMANDED

Defendants.

______________________________________/

**Complaint**

Mr. Wersant sues the Defendants as follows:

1. Under 28 U.S.C. § 1332 (a)(1), Mr. Wersant is an individual domiciled in and a citizen of California, who has standing to bring this case under Article III of the Constitution.

2. Under 28 U.S.C. § 1332 (a)(1), Defendants Mark Carey is an individual domiciled in and a citizen of New York for whom Mr. Wersant did substantial work in California, Georgia, New York and Ohio since 2023 with Mr. Carey's associate Frank Scortato, located within this District from which Mr. Carey benefitted and ratified. He is licensed to practice in New York.

3. Defendant Law Offices of Mark A. Carey PC, [Firm] is a corporation organized in Georgia, with its principal place of business in New York and is a citizen of both states.

4. Defendants Debra Donovan and Michelle Camarata are individuals domiciled in and citizens of Georgia under 28 U.S.C. § 1332 (a)(1), while Richard Camarata is domiciled in and a citizen of New Hampshire, and Kim Ferrandino is domiciled in and a citizen of Texas.

5. Jurisdiction exists here as this case seeks damages and relief valued in excess of $76,000.00 between adverse parties who are diverse under 28 U.S.C. §1332(a)(1).

6. Venue is proper by agreement of the Donovan, Camarata and Ferrandino Defendants, whose Retainer with Mr. Wersant permits him to enforce it where he practiced law at his option, such as here, and due to the related conduct of Defendant Carey and the Firm.

**Statement of Material Facts**

7. Defendant Carey is Mr. Wersant's associate, his client, his attorney since 2023 and his Attorney in Fact since 4/10/26, regarding Mr. Wersant's money at issue, whose NY York Bar No. is 4084729, whose office at the Firm is at 12396 McNeeley Road, Akron NY 14001

8. The Donovan/Camaratas/Ferrandino Defendants are Mr. Wersant's clients since 3/20/23, as reflected under a 4/19/24 Retainer, who communicated with him through Defendant Donovan as their agent, located at 4760 Ashford Club Drive Dunwoody GA 30338.

9. The Donovan and Camarata Defendants are the children of James Camarata, who married Donna Camarata, their stepmother, in December 1987, whose daughter is Kristin Dunn.

10. In October 2021, the Camaratas were involved in a boating accident causing Donna Camarata to become a paraplegic and that boat is now at issue as detailed below.

11. James Camarata then found an Assisted Living Facility for the care of Donna Camarata for her continued care after a brief hospital stay.

**The Tennessee Case.**

12. In November 2021, Mr. Camarata filed for divorce against Mrs Camarata in Hamilton County Tennessee Circuit Court Civil Action No. 21-D 2041 [Divorce Case].

13. The Divorce Case proceeded from 11/29/2021 until 12/22/22 which was delayed due to COVID-19, the Pandemic, starting in March 2020.

14. Mr. Camarata continued to care for Mrs. Camarata even after he moved from Tennessee to Florida in May 2022 after which his health declined by August 2022.

15. On 01/03/23 the Camaratas sold their marital home 11636 Holly Circle to Murray Logistics LLC under a Deed recorded at Hamilton Book 13180, Page 0308, which satisfied a HELOC for $175,000.00 leaving a balance of the proceeds [the Funds] of $417,223.38.

16. On 12/22/22, the Funds were deposited in the Hamilton Circuit Court Registry by Order of that Court, as shown by the Settlement referenced below.

17. In January 2023, James Camarata provided a Draft Settlement Agreement to his divorce counsel, to be a "complete and final settlement of all of their respective property rights to any property which may be hereinafter acquired by either of them, as well as any other matters relating to them" [Agreement, p. 1].

18. The Draft Agrement confirmed the Camaratas would equally split the proceeds of the sale of their home [Agrement ¶¶ 1] that Kristen Dunn was only "allowed to retrieve Wife's personalty and premarital personalty from the marital residence" [Agreement ¶¶ 2.A.].

19. The Agreement confirmed Donna Camarata would receive ½ of the equity in certain other marital possession from the sale of the home [Agrement ¶¶ 2.E].

20. The Agreement states the Camaratas shall equally divide "all bank accounts, life insurance policies, investment and retirement accounts whether owned individually or jointly" [Agrement ¶¶ 4.E] as the "entire understanding" of the Camaratas and "supersedes any and all prior agreements" between them such as "any oral and written" ones [Agreement ¶¶ 12].

21. The Agreement stated it was "entered into without any undue influence, fraud, coercion, misrepresentation, or any reason herein not stated" [Agreement ¶¶ 12].

22. The Agreement contains handwriting in several places, that of James Camarata, evidencing his ratification of this instrument upon which Donna Camarata relied in ratifying it.

23. The Camaratas died in 2023 before their divorce was finalized and is now abated.

24. The Funds were intended to be part of the divorce settlement, to be split equally between the Camaratas and are now being divided between their children consistent with the Draft Agreement, the original version of the Trust and applicable state law.

**Donovan, the Camaratas and Ferrandino Retain Mr. Wersant For the Tennessee Camarata Case.**

25. On 3/18/23, Mr. Wersant spoke with Defendant Donavan, after being referred this case by Steven Maitland at Vanderveur & Associates, as confirmed by her email to Mr. Wersant of 3/20/23, stating **"Thanks for the weekend conversation. You really are a kind man."**

26. On 3/20/23, Mr. Wersant reviewed and responded to an emailed summary of the ***Camarata*** case summary by Donovan and Richard Camarata and a Property Settlement and then Donovan's correspondence regarding the sale and closing of TN house for $417,223.38 in the divorce which were sent to her on 1/6/23 after Charles Dupree withdrew from it.

27. From March to May 2023, Mr. Wersant extensively researched and prepared a Federal Suit to enforce the Settlement before probate of the Of the Estate of Donna Camarata in Hamilton Probate Court based in part on undue influence over her by Dunn-George.

28. On 04/22/23 Mr. Wersant finalized and forwarded the Federal complaint for the Camarata Case to Donovan, who replied with edits and stated that:

> **"This looks amazing. I really can't thank you enough because I can imagine how much time this must have taken to put together. Especially coming in cold to this whole crazy situation. You are an angel."**

29. On 5/4/23, Mr. Wersant sent the Federal Complaint to Donovan who wrote:

> **It looks AMAZING.....WOW......you go girl!!!...I mean, guy. :) I updated some**

**typos throughout, so please use this clean copy I've attached here. And just a couple of things below."**

30. On 5/5/23, Mr. Wersant finalized and filed the Federal ***Camarata*** Case Complaint, Summons and JS44 and forwarded their filed copies to Donovan on 5/12/23.

31. Mr. Wersant then coordinated service of the ***Camarata*** Case Complaint on Dunn George and her brother Jonathan Dunn George.

32. On 6/06/23, Mr. Wersant discussed the Federal ***Camarata*** Case with Holloway, counsel for Dunn-George and on 6/9/23, responded to correspondence of Ogletree, as defense counsel for the Executor of the Estate in the ***Camarata*** Case, regarding an extension.

33. On 6/13/23, Mr. Wersant discussed the Federal ***Camarata*** Case with Holloway, counsel for Dunn-George regarding a proposed settlement involving a split of the 417k and other assets, between his clients and those of Mr. Wersant.

34. On 6/15/23, Mr. Wersant discussed and explained Hollway's offer of settlement in the ***Camarata*** Case and related it to Debra Donovan, a 50/50 split of the marital assets of James and Donna Camarata as if the divorce were finalized. Donovan rejected this offer and inquired about an 80/20 split in favor of her and her siblings, Michelle, Richard and Kim. [Case should have settled here] or the money should have been divided between all six children or at least all five children if Jonathan Dunn-George did not appear and was excluded.

35. On 05/05/23, Letters Testamentary were issued for the Estate of Donna Camara, naming her Ms. Dunn-George as its Executor, Hamilton Case No. 23-P-375 [The Probate Case].

36. From 2023-2024, Mr. Wersant represented or assisted Defendant Carey on numerous complex cases, in Georgia, Minnesota, New York and Ohio.

37. On 8/04/23, Defendant Carey texted Mr. Wersant **"I do not expect you to help me with it for free."** [meaning he would pay Mr. Wersant for his work on Carey's cases]

38. On 8/7/23, Carey texted Mr. Wersant that **"If you need money for your time, let me know"** and Carey confirmed he can send Mr. Wersant $500.00 as a partial down payment.

39. On 10/30/23, Mr. Wersant texted Defendant Carey about signing a retainer for assisting him with his cases documented below.

40. On 10/30/23, Carey responded he has a retainer somewhere in GA or NY. It was not executed. Mr. Wersant texted Mr. Carey about him needing it with the client. Mr. Carey texted in response: **"I hope you don't think I would go back on our agrement."**

41. On 11/13/23, Mr. Wersant retained Defendant Carey as local counsel for his clients to intervene in the TN Circuit Court Case to secure an equal share of the proceeds of the estate of Donna Camarata for his clients to which they were entitled under the Settlement.

42. Defendant Carey agreed to accept whatever Mr. Wersant decided to pay him for his services as they confirmed. Defendant Carey appeared in the Circuit Court Case on 11/13/23.

43. On 1/23/24, Defendant Carey texted Mr. Wersant "we are fired in name only, don't withdraw" [from the ***Bowman*** case] "I very much appreciate what you are doing for me."

44. On 4/19/24, Donovan, the Camaratas and Ferrandino entered into a Retainer with Mr. Wersant for his work on the Camarata Case since 3/20/23 of which Carey had notice.

45. The Retainer states "This Retainer Agreement is entered into this 19th day of April 2024 by Paul Wersant, of Justice Law Group, c/o its Director of Operations, Estella Voir [Attorney] and Debra Donovan, Michelle Camarata, Richard Camarata, and Kim Ferrandino ["Client or Client"] for Attorney's legal services [The Matters] as described below. [p. 1]

46. The Retainer states: "Client engages Attorney to conduct the litigation resolving the disputed ownership of the estates and trusts, marital and individual property, assets and liabilities of James and Donna Camarata. [Matters] between them and Kristin Dunn George and Jonathan Dunn as well as third parties such as (a) all monies in the registry of Hamilton TN Circuit Court Case No. 21D2041, resulting from the sale of their marital home." [Retainer ¶ 1A]

47. The Retainer states: "Client may collaborate with Attorney through Debra Donovan on the Matters, who has full authority to make decisions for Client…Client" also includes any entity or person authorized to enforce Client's rights in the Matters in any forum and whose discussions are likewise privileged for which Client waives any conflict of interest in any joint representation of himself and any third party by Attorney." [Retainer Agrement ¶ 1A]

48. The Retainer states "<u>Client and Attorney shall promptly update each other on the Matters of which they have knowledge and of any changes of their contact information and their ability to pursue the Matters</u>. [Retainer Agreement ¶ 1A]

49. The Retainer states "Client appoints Attorney as Client's Attorney-in-Fact, granting him full power and authority to pursue, conduct and conclude the Matters, including a full or partial settlement or judgment, to sign all documents regarding the Matters including, but not limited to checks, releases, dismissals, and documents Client could execute, subject to the applicable law of Georgia, <u>who understands all liens and expenses in the Matters shall be borne by Client and this Retainer creates an agency and an interest</u>. [Retainer Agreement ¶ B]

50. The Retainer states "Client agrees (a) Attorney is entitled to contingent fees as compensation for the Matters of 25% of all gross recovery for Client in the Matters (b) prior to any deductions from the gross recovery (c), including deduction of costs, fees and expenses for the matters for which Client is solely responsible and agrees [to pay] including but not limited to

costs and fees for court filings and service, for expert witnesses, for depositions, of document production, for statutory witness fees, travel expenses, for food and lodging, for photocopying, for medical or other expert reports or examinations and for costs of retaining local counsel as needed in the Matters, such as any jurisdiction in which Attorney is not admitted. [Retainer ¶ C]

51. The Retainer states "Client and Attorney and those related to them, including their agents, officers, directors, managers, consultants, insurers, employees, legal counsel, accountants, and representatives of any kind agree to never directly or indirectly disparage each other and those related to them, including their agents, officers, directors, managers, consultants, insurers, employees, legal counsel, accountants, and representatives for any reason. [¶ D 1.4]

52. The Retainer is governed by Georgia law. [Retainer Agreement ¶ G]

53. The Retainer states "The Parties agree to cooperate fully and execute all supplementary documents and take all actions necessary or appropriate to give full force and effect to the terms and intent of this Retainer." [Retainer Agreement ¶ H].

54. Mr. Wersant then continued to work on settlement of the Camarata Case as on 7/09/24, he sent a settlement proposal to Defendant Carey for the other Defendants, stating: ***We propose a counter offer a 50/50 split [of the assets of the estate after all of its debts have been cleared including a*** mutual release of all claims between the parties with response deadline by noon this Friday Defendant Carey confirmed he will convey this to Holloway.

55. On 7/25/24, Mr. Wersant drafted and sent correspondence to Defendant Carey and confirmed the ***Camarata*** Case Settlement offer "includes all debts and assets of Jim and Donna Camarata subject to our prior terms. I am copying our client contact Debra on this email. We need a response to this offer by Monday. Thank you."

56. Defendant Carey continued to handle the Camarata case as Mr. Wersant's local Counsel while Mr. Wersant worked on numerous cases for Defendant Carey as shown here.

57. On 8/26/25, Carey met Mr. Wersant for about an hour in Georgia, who confirmed he was going to file more documents in the Camarata case to resolve it so we can be paid.

58. Defendant Carey confirmed he was hired by Mr. Wersant as local counsel in the Camarata Case and will accept whatever fee Mr. Wersant deems reasonable for his services in it. He confirmed Mr. Wersant is still retained by the other Defendants for this case.

59. Mr. Wersant was then temporarily detained in Florida on a misdemeanor matter in Florida from 12/2/25 until his dismissal and release on 7/28/26 as Mr. Carey was fully aware.

**The Settlement Agreement**

60. On 12/25/25, Mr. Carey filed a Memorandum to Enforce the Settlement in the Tennessee Case, who cited and used the Amended Complaint researched, prepared by and sent to him by Mr. Wersant to join Debra Donovan, Michelle Camarata, Richard Camarata and Michelle Ferrandino as Plaintiffs to the Probate Chancery Case Court Case 23- P375, a continuation of the Circuit Court Case, a continuation of the Federal Court Case that Mr. Wersant handled for the Camarata and Donovan Defendants who were represented by Mr. Wersant as Carey admitted.

61. In his Declaration attached to the Memorandum, Mr. Carey stated that he notified Donovan, the Camaratas, Ferrandino and Mr. Wersant about the Settlement. (Declaration, ¶ 6)

62. On 3/17/26, Donovan, the Camaratas, Ferrandino and Dunn George entered into the Settlement Agrement and Mutual Release of the Cases under which Donovan, the Camaratas and Ferrandino received $208,000.00, fifty percent [50%] of the $417,000.00 deposited into the Court Registry, plus $2,578.70, a total **of $210,578.00, the settlement that Mr. Wersant**

**originally obtained for them as shown by these facts, of which Mr. Wersant is entitled to $52,644.50, twenty five percent [25%]** his fee under his 4/19/23 Retainer.

63. Mr. Carey's Declaration was untrue, who did not communicate with Mr. Wersant until April 2026 by his assistant and he did not disclose the entire Settlement to Mr. Wersant.

64. The Probate Case is closed in which the claims of Defendants were fully satisfied

65. On 3/18/26, Carey mailed Mr. Wersant a package while he was in custody, which included a letter to the authorities, confirming he is Mr. Wersant's attorney and is "assisting Mr. Wersant with legal affairs" including powers of attorney and related documents for him and his assistant, to manage Mr. Wersant's **legal** and financial affairs, and these documents are necessary to ensure that he able meaningfully access and manage those matters."

66. On 4/10/26, Defendant <u>Carey mailed Mr. Wersant a Limited Power of Attorney [POA] reflecting that Defendant Carey would hold Mr. Wersant's monies from the Settlement and other sources in his IOLTA account while Mr. Wersant was in custody in Florida.</u>

67. The Power of Attorney appointed Carey as Mr. Wersant's attorney in fact (Agent) and it is unaffected by Mr. Wersant's incapacity. [POA, Page 1]

68. <u>The Power of Attorney gave Carey limited authority to communicate with counsel discuss settlements and assist with enforcement on behalf of Mr. Wersant.</u> [POA, Page 1, ¶ 2]

69. The Power of Attorney is strictly limited which states Carey shall not execute Settlement Agreements or legally bind Mr. Wersant without his consent, shall not appear in court without prior written agreement or act as counsel in any jurisdiction where not admitted, shall not make final binding decisions without Mr. Wersant's approval. [POA, Page 1, ¶ 3]

70. The Power of Attorney was Mr. Wersant's authorization for Mr. Carey and Law Office to receive Mr. Wersant's settlement funds and hold them in Mr. Carey's IOLTA account pending written instructions. [Power of Attorney, Page 1, ¶ 4]

71. Carey and his assistant partially disclosed the existence of the Settlement to Mr. Wersant when they induced him to appoint them as his Attorneys in Fact and represented to him that he will receive a share of the Settlement in 30-45-days but inexplicably refused to disclose details of the Settlement to Mr. Wersant.

72. Carey violated the Power of Attorney by illegally interfering with Mr. Wersant's Retainer with the other Defendants as he admitted by failing to respond to Mr. Wersant's emails.

73. Carey also violated the Power of Attorney in April 2026, as shown by his below texts with Thanh Thuy Vo a/k/a Diane Vo, JD, Mr. Wersant's fiancée and POA residing in California, illegally pressuring her to turn over the sale proceeds of her jointly owned vehicle with Mr. Wersant in California to Defendant Carey <u>who is not licensed in CA</u>. [POA Page 1, ¶ 3]

74. On 4/11/26, Carey texted Ms. Vo "as soon as the money from TN comes in, I have surgery. I have been postponing it so **that I can get Paul the money from the TN Case."**

75. On 4/13/26, Defendant Carey texted Ms. Vo "we likely have 30 days before we get the [Camarata] money from the Court" and must sell her car with Mr. Wersant to pay his counsel, confirming the Camarata Case was already settled and Mr. Wersant should be paid.

76. On 4/15/26: Carey texted Ms. Vo "can you send me [Carmax's Paperwork] with their offer etc. 0.6 hours [once you get it]? She was in California and this was UPL by him.

77. On 4/15/26 Carey texted Ms. Vo, "I will get you the banking information shortly [for my account] Can they wire it?" [he wants Carmax to wire our money to him directly]

78. On 4/15/26, Defendant Carey texted Ms. Vo, that "I just learned that Car Max cannot (or will not) wire the Money. Have them make the check out to Law Offices of Mark A Carey. Deposit Only into IOLTA account."

79. On 4/15/26: Ms. Vo texted Carey "they only make it out to me because I am the seller, not you. They checked the title [to the car] and she can sell it. MC is not on the title to it."

80. Carey then texted "Ok, if they cannot change the payee and the check is made payable to you and/or Paul Wersant, then please endorse the back of the check as follows:

- First, if your name is listed as a payee, sign your name exactly as it appears on the check.
- Then if Paul Wersant is also a payee, write "Paul Wersant, by [your full name] as
- Attorney in Fact."
- Underneath those endorsements, write "for deposit only into IOLTA account of Mark A. Carey, PC."
- Please do not sign only your personal name without signing on behalf of Paul Wersant if he Is listed. Before mailing the check, please take a clear photo of the front and back and send it to me. I can send you money to Fex Ex it."

81. On 4/15/26: Ms. Vo responded by text "No, I will not do that. My name is on the title [to the Lexus] The only way I agree to sell it is if I have money to pay bills too. I will pay his attorney's fees of $15,000.00 [Jay Kirchner] and the rest I will take care of my storage units to stop the auction and pay bills. I will keep the money to get Paul out to the extended stay… she detailed her other bills and obligations she incurred for me."

82. On 4/15/26: Defendant Carey texted Ms. Vo "**Ok. I quit.** Not going through this. He [Mr. Wersant] can sit in jail. **This is not my problem.** This is not the appropriate way to handle this. Best of luck to you. At this point, it is between the two of you."

83. On 4/15/26, Defendant Carey texted Ms. Vo stating "Diane, I am his lawyer in this matter and have spent countless hours working on this Case from which I will derive no benefit…certainly more than 5k work. I expect my clients and those who work with them to do

exactly what I tell them to do it. That is my job. When they won't I don't represent them. It's as simple as that."

84. On 4/15/26, Ms. Vo texted Defendant Carey "Likewise I am not your client either, so you don't represent me. I am not subject to either GA or FL jurisdiction either. I am a resident of CA at all times. The car is in this state and registered in this State. I am on the title, and he gifted it to me. He put my name on the title. I did not force him to do so. I will pay the attorney [Jay] but asked so many attorneys already and even you said the same

85. Defendant Carey replied by text that "*I am his friend, which is why I agreed to have limited involvement. But now I am withdrawing that involvement…again when my clients and people who are involved don't follow my instructions I will not be involved*."

86. On 4/15/26, Ms. Vo replied to Carey by text "I don't want to be involved either. You want to assert control over me. I thought were his friend. You represent him as your client or friend. I am his fiancé and I will support him he just wants to get out, any guarantee or another lawyer going through his file and quit. [No response by MC who admitted this]

87. Defendant Carey clearly violated his duties as Mr. Wersant's attorney and under his Power of Attorney with Mr. Wersant, as shown by Defendant Carey's texts with Ms. Vo.

88. On 6/15/26, Mr. Wersant wrote Defendant Carey in Georgia and New York requesting payment of his fees and an accounting of the Settlement, with copies of the Settlement and other documents. Carey never responded to his request in violation of the Power of Attorney.

89. On 7/23/26, Mr. Wersant's prior attorney, Jay Kirschner, emailed Mr. Wersant's letter to Defendant Carey, requesting payment of his fees under the Settlement and an accounting for the Settlement, including copies of the Settlement documents. Defendant Carey refused to comply with this request in violation of the Power of Attorney.

90. On 7/27/26, Mr. Wersant wrote Defendant Carey seeking disbursement of the entire sum Defendant Carey received as his alleged fees in the Camarata Circuit Court Case, a copy of the Settlement Agrement, confirmed Mr. Wersant hired Defendant Carey as his local counsel in this case and can pay him whatever Mr. Wersant deems fair and reasonable after reviewing Defendant Carey's work on this Case and requested his mailing address, confirming that Mr. Wersant will be invoicing Defendant Carey for his services in Georgia, New York and Ohio for which he was not paid, as shown by the below email:

> From: **Paul Wersant, J.D.** <pwersant@gmail.com>
> Date: Mon, Jul 27, 2026 at 7:38 PM
> Subject: Release my money held in your IOLTA account immediately
> To: Mark Carey <markcareylaw@ymail.com>
>
> Dear Mark Carey, Esq.
> **Per your POA of 4/10/26, my letter and the emails of Ms. Vo and Mr. Kirschner, please wire my NFCU acct with the entire sum you received as fees in the Camarata case by 12pm EST tomorrow 7/28/2026 with an unredacted copy of the settlement agreement. I hired you as my local counsel in that case which I worked on since 2022. You agreed I can pay you whatever I deem fair and reasonable which I shall do after review of your work in it. Please provide your current mailing address**.
> **I will also be invoicing you for my services in your cases in GA, NY and OH for which I had not yet been paid. I trust that you will comply with this request.**
>
> Sincerely, Paul G. Wersant

91. On 7/25/26, Defendant Carey responded by email who refused to comply Mr. Wersant's request, in violation of the Power of Attorney.

92. On 8/5/26, Mr. Wersant wrote the following request, again seeking disbursement of the fees paid to Defendant Carey in the Camarata case and essentially the same information as he did on 7/27/26, as detailed below:

> **From: Paul Wersant, J.D. <pwersant@gmail.com>**
> **Date: Wed, Aug 5, 2026 at 11:42 AM**
> **Subject: Subject: URGENT: Immediate Interim Distribution and Accounting Request – Camarata Matter**
> **To: Mark Carey <markcareylaw@ymail.com>, Paul Wersant, J.D. <pwersant@gmail.com>, Justice Law Firm <justicelawfirmgroup@gmail.com>**

**Dear Mr. Carey,**

**This email requests your immediate attention regarding the attorney fees and settlement funds received in connection with the Camarata matter in Tennessee in which I hired you as local counsel under my retainer with all four clients. I understand you received these funds and are holding them in your IOLTA account under my POA with you dated 4/10/26 which you received as also confirmed by Ms. Wersant-Brensinger by text messages and during our conversation. I have not heard from you or her since 4/28/26.**
**To date, I did not receive any settlement statement, accounting, or documentation from you identifying:**
**1. The total settlement amount received;**
**2. The attorney fees collected;**
**3. Expenses or deductions made;**
**4. The amounts distributed to any parties; or**
**the remaining funds held.**
**As you know, my interest in this matter arose from my original representation of the clients and my work on the state and Federal cases beginning in 2022.**

**You were later involved to assist with the matter, and the Limited Power of Attorney dated April 10, 2026 authorized you to assist with settlement discussions and receive settlement funds into your IOLTA account pending appropriate instructions. At this time, I respectfully request an immediate interim distribution of 70% of the total attorney fees received by you from the Camarata matter, leaving 30% for you as your agreed portion, subject to final accounting and resolution of any remaining issues. This request is time sensitive. I am scheduled to check out of my hotel tomorrow morning and currently have no funds available to secure continued housing. I am in Florida without family support or financial resources and am awaiting arrangements to return to California.**

**Without immediate access to funds from this matter, I faces the possibility of being homeless. Any remaining issues between us, including final accounting, fee allocation, and any other disputed matters, can be addressed separately and resolved in due course. I am not waiving any rights or claims by requesting this interim distribution. Given the immediate circumstances, please provide confirmation by 2:00pm today regarding:**

**The amount of attorney fees received by you from the Camarata matter;**
**The amount available for immediate distribution; and authorization for release of the requested interim distribution. I trust this matter can be resolved professionally and promptly given the longstanding relationship between us especially after all that work I did for you involving Frank, Olivier, Pradeep, Chris and Basil and on your cases in Georgia, New York and Ohio for which I was not paid by you and which expended many hours of effort of my time and talent as an highly skilled attorney.**

**Respectfully, Paul Wersant**

93. On 8/6/26, the Donovan, Camarata and Ferrandino Defendant received Mr. Wersant's 8/6/25 email correspondence confirming the Settlement to which they failed to respond in breach of the Retainer and admitted by their silence, which states as follows.

> From: **Paul Wersant, J.D.** <pwersant@gmail.com>
> Date: Thu, Aug 6, 2026 at 4:34 PM
> Subject: Re: Follow up by Paul and Diane with Debra, Michelle, Rick and Kim
> To: Michelle Camarata <mlcamarata88@gmail.com>, Paul Wersant, J.D. <pwersant@gmail.com>Cc: Debra Donovan <debra.donovan@yahoo.com>, Rick&Terry Camarata <rtcamarata@gmail.com>, Kim Ferrandino <kim.ferrandino@gmail.com>, Justice Law Firm <justicelawfirmgroup@gmail.com>
> Dear Debra, Michelle Rick and Kim.
> **Diane and I hope you are doing well. We understand that the case may have settled. Please email us a copy of the Settlement Agreement, along with your correspondence regarding it, by 6:00pm today. Please see my attached retainer executed by each of you. We look forward to catching up with you very soon. :)**
> Sincerely,
>
> Paul

94. On 8/31/26 the Donovan, Camarata and Ferrandino Defendants received Mr. Wersant's below email correspondence confirming their receipt of the Settlement Funds to which they failed to respond in breach of the Retainer and admitted by their silence as follows:

> From: **Paul Wersant, J.D.** <pwersant@gmail.com>
> Date: Mon, Aug 31, 2026 at 3:38 PM
> Subject: Debra Donovan, Michelle Camarta, Rick Camarata and Kim Ferrandino
> To: Michelle Camarata <mlcamarata88@gmail.com>, Paul Wersant, J.D. <pwersant@gmail.com>
> Cc: Debra Donovan <debra.donovan@yahoo.com>, Rick&Terry Camarata <rtcamarata@gmail.com>, Kim Ferrandino <kim.ferrandino@gmail.com>, Justice Law Firm <justicelawfirmgroup@gmail.com>
>
> Dear Debra, Michelle, Richard and Kim:
> **I confirm that the Tennessee Case has settled, and each of you received those proceeds over two months ago, as we previously discussed. This recovery remains subject to my retainer, which each of you approved on 4/19/26 and which I emailed to you on 8/6/26 as shown by our attached emails.**
> Sincerely,
>
> Paul Wersant
> Email: pwersant@gmail.com

95. Defendant Carey repeatedly refused to pay and account for the Settlement to Mr. Wersant on the express instructions of the Donovan, Camarata and Ferrandino Defendants in breach of the Retainer, breaching his duties as Mr. Wersant's attorney at law and attorney in fact.

96. Defendant Carey did not respond to and admitted Mr. Wersant's below email.

From: **Paul Wersant, J.D.** <pwersant@gmail.com>
Date: Tue, Sep 1, 2026 at 1:16 PM
Subject: Re: termination of Mark Carey as local counsel for the Camaratas.
To: Mark Carey <markcareylaw@ymail.com>, Justice Law Firm <justicelawfirmgroup@gmail.com>, Paul Wersant, J.D. <pwersant@gmail.com>

Mr. Carey,

First, I have no evidence that you wrote this unsigned email.

Secondly, you cited no legal evidentiary basis for any allegations in your email, just as with your prior ones. These issues are reminiscent of your disorganized approach to your law practice which I helped you clean up from 2023-25 as I documented.

**Third, the Camaratas retained me with a written retainer providing a lien on any settlement proceeds, and they have not terminated me, contrary to your contentions. My relationship with them is not your business. Your interference with that relationship is illegal, a tort on your part and a violation of the Rules of Professional Conduct as you admitted. I hired you as their local counsel; you have not documented that you were retained by them in writing at all. You have produced no evidence that my clients in the Camarata Case terminated me. You confirmed this arrangement in writing on numerous times and during our last in-person meeting, which is well-documented.**

**Fourth again, you admitted breaching my POA dated 4/10/26 and illegally interfering with my fees from the proceeds of the Camarata Case. You and your assistant confirmed to me in April that you would provide them within 30-45 days. You never disclosed that you would use that POA to illegally withhold my money on this case, for which I was retained long before I met you. You refused to account for and pay that money in June, July and August, as Diane and I requested numerous times in writing. You provided no legal basis for your breach of my POA, which is again documented. You have provided no evidence of anything in your email unlike mine.**

**Fifth, you also harassed Diane Vo in California via text, seeking to steal and convert the funds from the sale of our car—which constitutes Unauthorized Practice of Law (UPL) on your part. You also refused to disclose your current mailing address as confirmed by your lack of response to them.**

**Sixth, I also learned of your undisclosed disciplinary and other legal issues which you never disclosed to me, constituting fraud on your part. In short, there is no justification for your conduct regarding me, nor for your theft of my money including the theft of services on the many cases I handled for you as you admitted. You engaged in bad faith throughout our**

**relationship as you did with your clients, which is confirmed by Basels's bar grievance against you, with which you pleaded for my assistance and refused to reciprocate. I confirmed this in writings by you.**

**Seventh, I also note your refusal to sign your correspondence or provide your contact information - which is your obligation under applicable law as I mentioned to you over two years ago.**

**Please comply with your POA, account for the money and provide copies of all of your communications with the Camaratas and any other persons or entities regarding me by 4:00pm via email today, 9/1/26._That email shall include your contact information and this information verified under penalty of perjury in writing.**

You will cease communicating with the Camaratas effective immediately- your relationship with them as my local counsel is terminated as of today.

Sincerely,

Paul Wersant
Email: pwersant@gmail.com

97. All conditions precedent to suit to occurred, are fulfilled, or waived, or their occurrence or fulfillment was unnecessary or futile.

**Count I: Conversion, Theft of Services**
**and Related Relief against the Defendants**

98. O.C.G.A. § 15-9-11 states: "In cases where an attorney has rendered such service but cannot render the balance of service due to the act of his client, providential cause, election to office, or removal out of the state, he is entitled to retain such amount or a due proportion thereof if collected, or if not collected, to bring an action to collect it."

99. O.C.G.A. §16-8-16 states "a person commits the offense of theft by services when by deception, with the intent to avoid payment, he knowingly obtains services, accommodations, entertainment or the use of personal property which is available only for compensation."

100. Conversion involves (1) plaintiff's possessory right or interest in property (2) defendant's intended dominion over or interference in it violating plaintiff's rights (3) and the refusal to return it on demand. ***Salatino v. Salatino***, 64 A.D.3d 925 (3d Dep't 2009).

101. Mr. Wersant entered into an enforceable contract with the Donovan, the Camarata and Ferrandino Defendants as shown by his 4/19/24 Retainer which ratified his representation of them since at least 3/20/23 as Mr. Carey knew, and had constructive, implied and actual notice.

102. The Donovan, the Camarata and Ferrandino Defendants covertly obtained the Settlement which they concealed from Mr. Wersant per Mr. Carey's false declaration, and they illegally retained his fee with the intent to avoid paying him in breach of the Retainer.

103. The Defendants converted Mr. Wersant's fees under the Retainer by illegally retaining them and refusing to pay them through Defendant Carey to Mr. Wersant.

104. This misconduct of the Donovan, the Camarata and Ferrandino Defendants was their intentional theft of Mr. Wersant's services, in breach of the Retainer, with the assistance of Defendant Carey and the Firm as their agents, which proximately and actually damaged him.

105. Mr. Wersant repeatedly made demand upon the Donovan, the Camarata and Ferrandino Defendants over a month ago, directly or through Defendant Carey and the Firm who unjustifiably refused to pay him, just to benefit themselves and convert his hard-earned fee.

106. The misconduct of the Defendants was malicious, intentional, fraudulent and reckless, who were grossly negligent and consciously indifferent to its consequences, which they ratified intending to harm Mr. Wersant, who is entitled to recovery for their theft of his services

107. Mr. Wersant demands judgment against the Defendants for triple damages of. $157,933.50 for his $52,644.50 fee, a lien on property related to the Settlement and just relief.

**Count III: Unjust Enrichment: Defendants Donovan, Camaratas and Donovan**

108. Since 2023 Defendants Donovan, the Camaratas and Ferrandino induced and requested Mr. Wersant, to confer the benefits of his legal services on them from which they benefitted, promising payment in good faith, upon which Mr. Wersant relied, billable to them at $950.00 per hour as documented on his invoice attached as **Exhibit 1**, which he may supplement.

109. Since 2023, Mr. Wersant litigated the Camarata Federal Case and retained Defendant Carey to appear in the Camarata Circuit Court and Probate Cases, working to resolve them, through extensive settlement negotiations with the opposing counsel, which produced the Settlement from which Defendants Donovan, the Camaratas and Ferrandino benefitted.

110. Defendants Donovan, the Camaratas and Donovan refuse to pay Mr. Wersant's fees under the Retainer through Defendants Carey and the Firm, to unjustly enrich themselves.

111. Mr. Wersant is entitled to $**158,460.00**, $950.00 per hour x 166.80 hours for his work on the Camarata Cases on behalf of Donovan, the Camaratas and Ferrandino as shown by a precise copy of his invoice attached as **Exhibit 1**[Section 1, pp. 1-14]a reasonable value.

112. Mr. Wersant requests judgment for **$158,460.00** against Defendants Donovan, the Camaratas and Ferrandino and the Firm, for his legal services to them billable at the rate of $950.00 per hour for 166.80 hours, costs, a lien on their property and assets to secure payment of his services an accounting and judgment for any monies recovered by them in the Raab case under his retainer and all just relief.

**Count IV: Legal Malpractice and Breach of Fiduciary Duty by Carey and the Firm.**

113. A legal malpractice plaintiff must allege (1) a duty, (2) a breach of the duty, (3) proof the client's damages were proximately caused by the breach of the duty. ***Ocean Ships, Inc. v. Stiles***, 315 F.3d 111 (2d Cir. 2002); ***Marshall v. Nacht***, 172 A.D.2d 728 (2d Dept. 1991).

114. Carey was Mr. Wersant's attorney as he admitted in his correspondence and texts

115. Carey owed a duty to Mr. Wersant to disburse the Settlement Funds and account for the Settlement under New York Law and under the Power of Attorney.

116. Carey breached his duty to Mr. Wersant by refusing to disburse the Settlement Funds and account for the Settlement as shown by their correspondence and also by utterly and selfishly refusing to communicate with Mr. Wersant from April to July 2026.

117. Mr. Carey also breached his duty to Mr. Wersant by harassing Ms. Vo to pay him the proceeds of the sale of the car owned by her and Mr. Wersant in California, which was the unauthorized practice of law on his part, in violation of the Power of Attorney.

118. Defendant Carey and the Firm assisted the other Defendants with their intentional conversion of Mr. Wersant's fees, and their theft of his services, as their agents, damaging him in violation of his fiduciary duties as Mr. Wersant's attorney and under the Power of Attorney.

119. Mr. Wersant repeatedly made demand upon Donovan, the Camaratas and Ferrandino Defendants over a month ago, directly or through Carey and the Firm who refused to pay him without any legal justification just to benefit themselves and steal his hard-earned fee.

120. The misconduct of Carey and the Firm was malicious, intentional, fraudulent and reckless, who were grossly negligent and consciously indifferent to its consequences, which they ratified intending to harm Mr. Wersant, who is entitled to recovery as shown here.

121. Mr. Wersant demands judgment against Carey and the Firm for their misconduct for triple damages of $157,933.50 for his $52,644.50 fee, and other just relief.

**Count V: Unjust Enrichment: Defendants Carey and the Firm**

122. From 2023-2024, Defendant Carey requested Mr. Wersant to confer the benefits of his legal services upon him and the Firm from which they benefitted, including as their local counsel promising payment in good faith, upon which Mr. Wersant relied, billable to them at $950.00 per hour as documented on his invoice attached as **Exhibit 1**, which he may supplement.

123. From 2023-24, Mr. Wersant litigated Carey's legal issues in the ND OH Case No. 1:23-cv-01311-BMB [OH]involving his father's house, at 131 North Park Avenue, Buffalo, NY 14216, with a value in excess of $350,000.00, which Carey claimed he was his father's successor by virtue of paying the mortgage by the lender's consent, as detailed in the Invoice.

124. Mr. Wersant assisted Carey in litigating his related New York foreclosure case, Index No. 803815/2022 and AD Docket No. CA23-01328 [FC] enabling Defendant Carey to collect rental income from his tenants and other benefits from it as shown by the record.

125. Mr. Wersant recently discovered that Carey filed an claim in the foreclosure on 7/18/24 for surplus sale proceeds, enriching himself and the Firm, stating that:

> **Please take notice that Mark A. Carey of 131 North Park Avenue, Buffalo, New York, 14216, the attorney for the Estate and one of the Defendants, as well as one of the defendants in the above-referenced case is entitled to the surplus monies arising from the sale made on January 29, 2024, and closed on March 22, 2024, under a judgment of this Court in the above-referenced case (even though said judgment was erroneous) and that this claim thereupon amounts to $115,128.36 with interest thereon from the 3rd day of April, 2024.**

126. Carey wrongfully concealed his receipt of these funds from Mr. Wersant to

enrich himself and the Firm at Mr. Wersant's expense, in breach of his promise to pay him, as he breached Mr. Wersant's Power of Attorney and converted the Settlement Funds for his own use.

127. Mr. Wersant assisted Carey in successfully defending a bar grievance against him by Basel Kawouk, one of his clients, regarding their dispute over collection accounts.

128. Mr. Wersant and Carey were also retained by David Raab and Danielle Raab New York Supreme Court Index No. 806432/2023 under a 8/16/23 retainer providing Mr. Wersant would receive contingent fees of twenty five percent (25%) if the case was resolved before suit and thirty-three (33%) if resolved post-suit in their favor.

129. Mr. Wersant heard nothing further from Carey about the Raab Case since 10/12/23 when Defendant Carey texted him that he was serving discovery on it.

130. However, the online docket of the Raab case shows that Carey represented the Raabs of record until 7/18/24 and the case was resolved by 2024, for which Carey owes Mr. Wersant an accounting of any funds paid to their clients, which Carey never provided to him.

131. Mr. Wersant also assisted Carey in Georgia and New York regarding his cases involving Robyn Bowman, owner of Phoenix Asset Group, LLC which bought, sold, and managed alleged distressed debt portfolios, conducted as a racket to defraud investors under the SEC Acts of 1933-34 who conducted illegal collection and related activities against third parties.

132. The Bowman cases were referred to Carey by Frank Scortato, an investigator living in New York, who connected Carey with Mr. Wersant to obtain his legal services.

133. Mr. Wersant, provided his legal services to Carey and the Firm from which they benefitted which should be repaid, who are otherwise unjustly enriched by them

134. Mr. Wersant is entitled to **$162,355.00**, <u>$950.00 per hour x 170.09 hours for his</u>

work on Defendant Carey's personal NY, OH and GA cases, as shown by a precise copy of his invoice attached as **Exhibit 1**[Section 2, pp. 12-24] a reasonable value.

135. Mr. Wersant is entitled to **$173,755.00,** $950.00 per hour x 182.90 hours for his work on Defendant Carey's NY, GA and MN cases, relating to his Firm, as shown by a precise copy of his invoice attached as **Exhibit 1**[Section 3, pp. 25-43] a reasonable value.

136. Mr. Wersant requests judgment for **$336,110.00** against Defendants Carey and the Firm, for his legal services to **them billable at the rate of $950.00 per hour for 352.99 hours,** costs, a lien on their property and assets to secure payment of his services an accounting and judgment for any monies recovered by them in the Raab case under his retainer and all just relief.

**Count IV: Violation of N.Y. Jud. Law § 487 against Defendants Carey and the Firm.**

137. The NY Judiciary Law § 487 states "[a]n attorney or counselor who is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party or willfully delays his client's suit with a view to his own gain; or, willfully receives any money or allowance for or on account of any money which he has not laid out or becomes answerable for, is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law he forfeits to the party injured treble damages, to be recovered in a civil action."

138. Defendants Carey and the Firm violated NY Judiciary Law § 487 by receiving, wrongfully concealing, withholding, refusing to pay and account for the Settlement to Mr. Wersant on the express instructions of the other Defendants as they admitted here.

139. Defendants Carey and Firm knowingly and willingly prevented Mr. Wersant from receiving his fee of $52,644.50, twenty five percent [25%] under his Retainer, whose wrongful and deceptive acts directly and proximately caused injury and damages to Mr. Wersant.

140. Mr. Wersant demands actual and treble damages for these violations of NY Judiciary Law § 487 by Defendants Carey and Firm of $157,933.50 for his fee and just relief.

141. The individual Defendants are not minor(s) or adjudged incompetent; were not in the military for the last 30 days and are not subject to protection per 50 U.S.C. § 3901

Respectfully submitted this 18th day of September 2026

By: */s/Paul G. Wersant*
Paul G. Wersant
40533 Corte De Opalo
Murrieta, California 92562
Telephone: (714) 770 -5444
Email: pwersant@gmail.com
Email: justicelawfirmgroup@gmail.com
Plaintiff *Pro-Se*